UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MBE CAPITAL PARTNERS LLC,

Plaintiff,

- against -

AVPOL INTERNATIONAL LLC, d/b/a AIL
LOGISTICS SOLUTIONS, SANDRA K.
WALLS, EMERALD TRANSFORMER
CORPORATION, KIEWIT POWER
CONSTRUCTORS CO., BODINE
ALUMINUM, INC., UNITED STATES OF
AMERICA, GENERAL SERVICES
ADMINISTRATION and UNITED STATES
ARMY CORPS OF ENGINEERS,
NASHVILLE and MEMPHIS DISTRICTS,

Defendants.

**ORDER**

17 Civ. 5992 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff MBE Capital Partners, LLC ("MBE") brings this action against

Defendants AVPOL International LLC, d/b/a AIL Logistics Solutions ("AVPOL"), AVPOL's

managing member, Sandra K. Walls, and several of AVPOL's customers – including the General

Services Administration ("GSA") and the United States Army Corps of Engineers, Nashville

District and Memphis District (the "Memphis Corps" and the "Nashville Corps") – asserting

breach of contract, fraud, negligence, conversion, and interference with contractual relations in

connection with a contract Plaintiff entered into with AVPOL. Defendants GSA, the Memphis

Corps, and the Nashville Corps (collectively, the "Government Defendants"), have moved to

dismiss. For the reasons stated below, the Government Defendants' motion to dismiss will be

granted.

## BACKGROUND[1]

Plaintiff MBE is a New York limited liability company engaged in the business of financing accounts receivable. (Am. Cmplt. (Dkt. No. 30) ¶¶ 1, 12) Defendant AVPOL is a Texas limited liability company with a principal place of business in Memphis, Tennessee. (Id. ¶ 2). On or about April 17, 2017, MBE entered into a Factoring and Security Agreement (the "Agreement") with AVPOL in which MBE agreed to finance certain of AVPOL's accounts receivable. (Id. ¶¶ 13-14; Ex. 1 (Agreement)). That same day, Defendant Walls executed a Validity Guaranty (the "Guaranty"), by which she guaranteed all of AVPOL's obligations to MBE. (Id. ¶ 15; Ex. 2 (Guaranty))

Pursuant to the Agreement, (1) AVPOL assigned certain of its accounts receivable to MBE; and (2) MBE advanced to AVPOL 85 percent of the amount invoiced to each of the customers whose accounts were assigned to MBE. (Id. ¶¶ 14, 16; Ex. 1 (Agreement) ¶ 1.2) Defendants Emerald Transformer Corporation ("Emerald"); Kiewit Power Constructors Co. ("Kiewit"); Bodine Aluminum Inc. ("Bodine"); the GSA; the Memphis Corps; and the Nashville Corps (collectively, the "Customers") all had their AVPOL accounts assigned to MBE. (Am. Cmplt. (Dkt. No. 3) ¶¶ 4-9) The Customers were informed of the assignment of their accounts to MBE, and were instructed to and agreed to make payments on their AVPOL invoices to MBE. (Id. ¶¶ 17-18)

The Agreement addresses the parties' obligations in the event that Customers make payments on their AVPOL invoices to an individual or entity other than MBE. Such payments are referred to as "Misdirected Payments." (See Ex. 1 (Agreement) ¶ 13.6). The

---

[1] Unless otherwise noted, the following facts are drawn from the Amended Complaint, and are presumed true for purposes of resolving the Government Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

Agreement – which identifies MBE as "Purchaser" and AVPOL as "Seller" – provides that

"Seller shall pay to Purchaser on the next banking day following the date of receipt by Seller the

amount of . . . [a]ny payment on account of a Purchased Account." (Ex. 1 (Agreement) ¶

13.6.1). The Agreement further provides that

> Seller shall pay the following fee to Purchaser immediately upon its accrual: (a)
> 15% of the amount of any payment (but in no event less than $1,000) on a
> Purchased Account . . . which has been received by Seller or a third party (a
> "**Misdirected Payment**") and not paid by Seller to Purchaser on the next business
> day following the date of receipt by Seller or the date of Seller's knowledge of
> receipt by such third party; or (b) 30% of the amount of a Misdirected Payment
> made as a result of any action taken by Seller to cause such payment to be
> misd[i]rected.

(Id. ¶ 13.6.3) (emphasis in original)

MBE advanced $496,132.23 to AVPOL concerning invoices – amounting to

$583,648.98 – that had been sent to Customers. Defendant Emerald was invoiced $7,150.08;

Defendant Kiewit was invoiced $341,224.76; Defendant Bodine was invoiced $8,261.85;

Defendant GSA was invoiced $39,285.99; the Nashville Corps was invoiced $141,013.53; and

the Memphis Corps was invoiced $46,678.55. (Am. Cmplt. (Dkt. No. 30) ¶¶ 19-20). MBE did

not receive payments concerning any of these invoices, however. Instead, all payments were – at

Defendant Wall's request – sent to AVPOL. (Id. ¶¶ 21-22, 25). AVPOL also did not transmit

any of the payments or portions thereof to MBE. (Id. ¶ 24)

On August 4, 2017, MBE delivered claim letters to GSA, Memphis Corps, and

Nashville Corps that include a "Statement of Account" reflecting the sum owed to MBE. Each

letter states that

> [t]he amount reflected in the attached Statement of Account remains due and
> owing to MBE Capital Partners LLC. That you may have paid all or any part
> thereof to your vendor, AVPOL International, LCC d/b/a AIL Logistics Solutions,
> is not a viable defense. Your company was duly notified that all invoices were

duly purchased by MBE Capital. Therefore, any payments made to AVPOL/AIL were improper and constitute a fraud against MBE.

Unless full payment of all amounts due is immediately made, we intend to proceed with legal action against both AVPOL/AIL and your company. Please be guided accordingly.

(Claim Letters (Dkt. No. 54-1)) None of the Government Defendants responded to MBE's claim letters. (Schneiderman Aff. (Dkt. No. 54) ¶ 3)

The Complaint was filed on August 9, 2017, and asserts, inter alia, breach of contract claims against AVPOL and Walls; a fraud claim against Walls; a claim of money had and received against AVPOL; and an interference with contractual relations claim against the Customer Defendants. (See Cmplt. (Dkt. No. 1) ¶¶ 26-50) An Amended Complaint was filed on January 18, 2018. In the Amended Complaint, MBE drops its interference with contractual relations claim against the Government Defendants, but adds new claims for negligence and conversion. (See Am. Cmplt. (Dkt. No. 30) ¶¶ 43-51)

On May 1, 2018, Defendant AVPOL filed a bankruptcy petition. (Suggestion of Bankruptcy (Dkt. No. 32)) Defendant Walls filed a bankruptcy petition on June 8, 2018. (See Suggestion of Bankruptcy (Dkt. No. 50))

The Government Defendants have moved to dismiss, contending that (1) this Court lacks subject matter jurisdiction because MBE failed to exhaust its administrative remedies, as required by the Federal Tort Claims Act ("FTCA"); (2) the Amended Complaint fails to state a claim, because the claims made against the Government Defendants are not cognizable under the FTCA; and (3) Plaintiff has not perfected service upon the Government Defendants. (Gov't Defs. Br. (Dkt. No. 43) at 3)

In opposing the Government Defendants' motion, MBE argues that the instant action is automatically stayed as a result of AVPOL and Walls' bankruptcy petitions. (Pltf. Br.

4

(Dkt. No. 55) at 1-2) MBE further contends that the Amended Complaint states a claim, and that its failure to timely perfect service should be excused. (Id. at 2-3) MBE does not directly address the Government Defendants' argument that MBE failed to exhaust its administrative remedies.

## DISCUSSION

## I.   APPLICATION OF THE BANKRUPTCY ACT'S AUTOMATIC STAY

Under the Bankruptcy Act, a bankruptcy petition

> operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a). However, Section 362(a) "limits the extension of an automatic stay to a 'proceeding against the debtor.'" CAE Indus. Ltd. v. Aerospace Holdings Co., 116 B.R. 31, 32 (S.D.N.Y. 1990) (quoting 11 U.S.C. § 362(a)). Accordingly, "[i]t is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 65 (2d Cir. 1986) (citations omitted); see also Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 226 (S.D.N.Y. 2002) ("By letter . . ., counsel informed me that The New Silver Palace Restaurant, Inc. filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The automatic stay imposed by section 362(a)(1) . . . affects only The New Silver Palace Restaurant, Inc.; it does not apply to plaintiff's claims against the restaurant's non-debtor co-defendants." (citation omitted)); Rosenbaum v. Dane & Murphy, Inc., 189 A.D.2d 760, 761 (2d Dept. 1993) ("The automatic stay provisions of the [f]ederal bankruptcy laws do not extend to non-bankrupt codefendants.") (citing Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1199 (6th Cir. 1983)).

Only in "unusual circumstances" will the automatic stay apply to co-defendants not in bankruptcy proceedings, see Chord Assocs. LLC v. Protech 2003-D, LLC, No. 07 Civ. 5138 (JFB) (AKT), 2010 WL 1257874, at *3 (E.D.N.Y. Mar. 25, 2010) (citing A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986), such as "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate."[2] Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003). Where the automatic stay does not apply, a court may "still invoke its discretionary authority to stay the proceedings against [non-bankrupt codefendants]," but "[t]he proponent of the stay 'bears the burden of demonstrating that such a stay is justified.'" Lightbody v. Girlie's Ambulette Serv. Inc., No. 09 Civ. 5493 (ILG), 2010 WL 3417844, at *2 (E.D.N.Y. Aug. 27, 2010) (quoting WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997)).

Here, Plaintiff concedes that the automatic stay does not extend to the Government Defendants. (See Pltf. Br. (Dkt. No. 55) at 2 ("[I]t is axiomatic that proceedings may continue against the solvent co-defendants.")) Plaintiff complains, however, that "procedure dictates that, as to the insolvent parties, the case either be dismissed or severed. Neither of those actions has happened in this case." (Id.) Whatever the merits of this assertion – which is not supported by citation to case law – Plaintiff does not explain what bearing the Court's failure to dismiss or sever the claims against AVPOL and Walls has on the Government

---

[2] An "immediate adverse economic consequence to the debtor's estate" may be present where there is "'a claim to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer, and actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant.'" Lightbody v. Girlie's Ambulette Serv. Inc., No. 09 Civ. 5493 (ILG), 2010 WL 3417844, at *2 n.3 (E.D.N.Y. Aug. 27, 2010) (quoting Queenie, Ltd., 321 F.3d at 287-88).

Defendants' motion to dismiss. Nor does Plaintiff provide any basis for this Court to stay this action as to the solvent defendants.

The Court concludes that the automatic stay in place with respect to Defendants AVPOL and Walls has no bearing on the Court's resolution of the Government Defendants' motion to dismiss.

## II.   SUBJECT MATTER JURISDICTION

### A.   General Principles

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) (internal quotation marks and citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (citing Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam). However, "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks and citations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)).

**B.**     **Jurisdiction Under the Federal Tort Claims Act**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). "Thus, only if Congress consents can the United States be sued." Fiore v. Medina, No. 11 Civ. 2264 (RJS), 2012 WL 4767143, at *6 (S.D.N.Y. Sept. 27, 2012) (citing Dorking Genetics v. United States, 76 F.3d 1261, 1263 (2d Cir. 1996)). "Because sovereign immunity is jurisdictional in nature, 'the terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Id. (quoting F.D.I.C., 510 U.S. at 475).

In the Federal Tort Claims Act, the United States waives its sovereign immunity as to certain claims. The FTCA provides that federal district courts

> shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages[] . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]

28 U.S.C. § 1346(b)(1).

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies," however. McNeil v. United States, 508 U.S. 106, 113 (1993). The statute provides that an action brought under the FTCA "shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and [the claimant's] claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). "The failure of an agency to make final disposition of a claim within six months after it is filed[, however,] shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." Id. This exhaustion requirement "extends to all suits," and "is jurisdictional and cannot be waived."

Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) (citations omitted).

### C.   **Analysis**

MBE states that it presented its claims to the Government Defendants on August 4, 2017, five days before it filed the Complaint. (See Schneiderman Aff. (Dkt. No. 54) ¶ 3; Cmplt (Dkt. No. 1))  MBE does not allege that any of the Government Defendants denied its claim before MBE filed suit, however.  Indeed, Plaintiff emphasizes that the Government Defendants did not respond to its claim.  (See Schneiderman Aff.  (Dkt. No. 54) ¶ 3 ("[O]n or about August 4, 2017, Plaintiff submitted claims to the Government Defendants. . . . The Government Defendants failed to act.  To date, no responses have been received."))  Obviously, six months did not elapse between August 4, 2017 – when MBE presented its claims to the Government Defendants – and August 9, 2017, when MBE filed the Complaint.  (See Cmplt. (Dkt No. 1))

Moreover, the fact that more than six months have passed since Plaintiff submitted its claims to the Government Defendants does not cure the jurisdictional defect.  "The requirement that prematurely filed FTCA claims be dismissed holds even when . . . the FTCA claims would be ripe if re-filed at the date of the court's decision." Liriano v. ICE/DHS, 827 F. Supp. 2d 264, 269 (S.D.N.Y. 2011) (dismissing for failure to exhaust administrative remedies where plaintiffs filed suit fewer than three months after submitting their administrative claims) (citing McNeil, 508 U.S. at 112-13).  Indeed, "[c]ourts have . . . consistently enforced the FTCA's exhaustion requirement even where . . . events after filing of the complaint would likely enable a plaintiff to satisfy the requirements of 28 U.S.C. § 2675(a) were he to file his case anew." Fiore v. Medina, No. 11 Civ. 2264 (RJS), 2012 WL 4767143, at *7 (S.D.N.Y. Sept. 27, 2012) (citations omitted); see also Gay v. Terrell, No. 12 Civ. 2925 (CBA), 2013 WL 5437045,

at *3 (E.D.N.Y. Sept. 27, 2013) ("Because th[e] [exhaustion] requirement is jurisdictional, the subsequent denial of an administrative claim cannot cure a prematurely filed action.") (internal quotation marks and citations omitted)); Barry v. S.E.C., No. 10 Civ. 4071 (CBA), 2012 WL 760456, at *4 (E.D.N.Y. Mar. 7, 2012) (dismissing FTCA claim as "premature," and noting that a failure to exhaust "may not be cured by subsequent exhaustion or amendment of a complaint") (citations omitted)); Tarafa v. B.O.P. MDC Brooklyn, No. 07 Civ. 554 (DLI) (LB), 2007 WL 2120358, at *3 (E.D.N.Y. July 23, 2007) ("[A]lthough it is this court's view that dismissing [plaintiff's] FTCA claim and requiring him to re-file is the ultimate exercise of form over substance, this court must dismiss [plaintiff's] FTCA claim under the Supreme Court's dictates in McNeil.") (internal quotation marks and citations omitted)).

Even if MBE had complied with the six-month waiting period before commencing this lawsuit, its claims against the Government Defendants would still be subject to dismissal, both because its letters are conclusory, and because there is insufficient proof that the Government Defendants received MBE's claim letters.

"The majority of district courts in this circuit have held that a plaintiff must show proof that the agency actually received a claim in order to satisfy the FTCA's presentment requirement." Young v. United States, No. 12 Civ. 2342 (ARR) (SG), 2014 WL 1153911, at *8 (E.D.N.Y. Mar. 20, 2014) (citing Jaghama v. United States, No. 11 Civ. 5826, 2013 WL 508497, at *2 (E.D.N.Y. Feb. 11, 2013); Torres v. United States, No. 07 Civ.1390 (NGG) (LB), 2008 WL 215124, at *3 (E.D.N.Y. May 20, 2008); Pinchasow v. United States, 408 F. Supp.2d 138, 142 (E.D.N.Y. 2006), aff'd, No. 06-1139-CV, 2006 WL 3370714 (2d Cir. Nov. 20, 2006)). MBE has not offered such evidence here. Instead, MBE's counsel represented to the Court on July 2, 2018, when MBE's opposition to the Government Defendants' motion to dismiss was filed, that

she "had expected to have in hand no later than this afternoon copies of the FedEx proofs of delivery [for the claim letters]. Unfortunately, I was not able to obtain them in time." (Schneiderman Aff. (Dkt. No. 54) ¶ 3 n.1)

Those proofs of delivery have still not been submitted to the Court. Moreover, the Government Defendants have submitted declarations stating that they have no record of MBE ever filing an administrative claim in connection with the events described in the Complaint and Amended Complaint.[3] (See Weil Decl. (Dkt. No. 45); Jagoditz Decl. (Dkt. No. 46); Mullen Decl. (Dkt. No. 47); Austin Decl. (Dkt. No. 48)) Given that MBE has not offered proof that its claim letters were delivered to the Government Defendants, it has likely not satisfied the claim presentment requirement. See Vecchio v. United States, No. 05 Civ. 393 (PAC), 2005 WL 2978699, at *6 (S.D.N.Y. Nov. 3, 2005) ("The Court holds that actual receipt by the agency is required [to establish claim presentment] . . . . If arguendo the Court were to hold that proof of mailing creates a presumption of receipt, the Court holds that the Government's two affidavits [asserting that the plaintiff's claim was not received] are more than adequate to rebut such a presumption.").

To fulfill the claim presentment requirement, the notice of claim must also "provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth." Romulus v. United States, 160 F.3d 131, 132 (2d Cir. 1998) (citing Keene Corp.

---

[3] As to GSA, the record is not entirely clear. The Mullen Declaration submitted on behalf of the GSA states that the time period between August 9, 2017 and August 31, 2017 was checked for administrative claims from MBE. (See Mullen Decl. (Dkt. No. 47)) If Plaintiff's claim was mailed on August 4, 2017, this search may not have uncovered MBE's claim letter to GSA. The Austin Declaration – also submitted on behalf of GSA – states that a search was conducted for the period between April 1, 2014 and June 6, 2018. This search was limited to SF-95 forms, however, which is the standard FTCA notice of claim form. (See Austin Decl. (Dkt. No. 48)) Since MBE's claim to GSA was not presented on an SF-95 form, this search would not have uncovered MBE's claim letter.

v. United States, 700 F.2d 836, 842 (1983)). Although the notice of claim "does not need to satisfy formal pleading requirements," it nevertheless "must 'be specific enough to serve the purposes intended by Congress in enacting § 2675(a) – to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States.'" Young, 2014 WL 1153911, at *7 (quoting Johnson by Johnson v. United States, 788 F.2d 845, 848-49 (2d Cir. 1986), overruled on other grounds by Sheridan v. United States, 487 U.S. 392 (1988)). Accordingly, "conclusory statements which afford the agency no reasonable opportunity to investigate" will not satisfy the presentment requirement. Id. (quoting Romulus, 160 F.3d at 132).

Here, the letters MBE claims that it sent to each of the Government Defendants read, in their entirety, as follows:

> The amount reflected in the attached Statement of Account remains due and owing to MBE Capital Partners LLC. That you may have paid all or any part thereof to your vendor, AVPOL International, LCC d/b/a AIL Logistics Solutions, is not a viable defense. Your company was duly notified that all invoices were duly purchased by MBE Capital. Therefore, any payments made to AVPOL/AIL were improper and constitute a fraud against MBE.

> Unless full payment of all amounts due is immediately made, we intend to proceed with legal action against both AVPOL/AIL and your company. Please be guided accordingly.

(Claim Letters (Dkt. No. 54-1))

MBE's claim letters suggest that MBE intends to assert fraud claims against the Government Defendants. The letters do not address the negligence and conversion claims that MBE now asserts against the Government Defendants in the Amended Complaint, however. Moreover, MBE's claim letters do not "provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth," Romulus, 160 F.3d at 132, and therefore do not satisfy the claim presentment requirement. See Lassic v. United States, No. 14

12

Civ. 9959 (KBF), 2015 WL 5472946, at *4 (S.D.N.Y. Sept. 16, 2015), aff'd, 668 F. App'x 395 (2d Cir. 2016) (finding that notice of claim was insufficient to satisfy claim presentment requirement where the notice "is silent as to both . . . claims" pled in the complaint); Keene Corp. v. United States, 700 F.2d 836, 842 (2d Cir. 1983) ("The generality of the statement claiming liability on the part of the government failed to provide sufficient information regarding the nature and merits of Keene's claim so far as liability is concerned. The burden is on the claimant to provide this information[.]").

Because MBE has not demonstrated that it exhausted its administrative remedies, its FTCA claims against the Government Defendants will be dismissed for lack of subject matter jurisdiction.[4]

## CONCLUSION

For the reasons stated above, the Government Defendants' motion to dismiss for lack of subject matter jurisdiction is granted. The Clerk of Court is directed to terminate the motion (Dkt. No. 42).

Dated: New York, New York
      February 11, 2019

                    SO ORDERED.

                    Paul G. Gardephe
                    United States District Judge

---

[4] Having ruled that subject matter jurisdiction is lacking, the Court does not reach the Government Defendants' remaining arguments for dismissal.

13